# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

---

**ALVIN O. HANNAH,**

       **Plaintiff,**

**v.**             **Case No. 09-C-813**

**CITY OF MILWAUKEE,**

       **Defendant.**

---

## DECISION AND ORDER

---

The action filed by pro se Plaintiff Alvin O. Hannah ("Hannah"), a police officer employed by the Defendant City of Milwaukee ("City") Police Department ("MPD"), is before the Court on the City's third motion for summary judgment and Hannah's motion to compel and for sanctions. Hannah's original Complaint alleged that the City and other Defendants violated Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. § 2000e *et seq.*

By an August 4, 2010, Decision and Order, granting in part the Defendants motion for summary judgment, the Court dismissed Hannah's Title VII claims against the other Defendants for failure to state a claim and extended the time for the service of the summons and Complaint upon the City. Hannah, who has been employed as an MPD officer since December 2, 1996, alleges that from February 21, 2008, until August 13, 2008, the City

discriminated against him due to his race and gender by engaging in harassment, subjecting him to discriminatory terms and conditions of employment, and disciplining him in violation of 42 U.S.C. § 2000e-2(a)(1). Hannah also alleges that the City retaliated against him for engaging in protected activity in violation of 42 U.S.C. § 2000e-3(a).

## Motion for Summary Judgment

Titling its moving papers as a motion for summary judgment, the City cites Federal Rules of Civil Procedure 12(b)(6) and 56(c). The City asserts that Hannah has failed to state a claim upon which relief may be granted and that, because there is no genuine dispute of material fact, it is entitled to summary judgment as a matter of law dismissing this action. Given the posture of this action, the Court will consider the motion as seeking summary judgment pursuant to Rule 56.

Before addressing the motion, the Court notes that, although the City served Hannah with copies of the applicable rules, as required by Civil L.R. 56(a) (E.D. Wis.), Hannah proffers his own affidavit in opposition to the affidavit of Leonard Tokus ("Tokus"), an assistant City attorney.[1] Hannah has not filed a document that directly addresses the City's proposed statements of material facts. *See* Civ. L.R. 56(b)(2) & (b)(4).

However, many of the City's proposed statements of material fact rely upon the Tokus affidavit, and Hannah, a non-lawyer, is representing himself in this action. Taking that into consideration, the Court has liberally construed Hannah's responsive filings regardless

---

[1]Hannah also proffers his own statements of material facts in opposition to the summary judgment motion.

2

of their labels to determine whether they raise a factual dispute with respect to the City's proposed statements of material facts.

Regardless, with respect to those filings, a statement in Hannah's affidavit indicating that he "disagrees" with a fact in the Tokus affidavit is insufficient to raise a factual dispute. *See* Fed. R. Civ. P. 56(c). For example, Hannah "disagrees" with two job descriptions that the City proffers as true and correct copies of the positions of police officer and police aide. (*See* Hannah Aff. ¶¶ 3-4.) Hannah asserts that the police officer job description has a prepared date of March 19, 2004, and is signed by former MPD Chief Nannette Hagerty. (*See* Hannah Aff. ¶ 3 (citing Tokus Aff. ¶ 3, Ex. 1).) He states that police officers' duties have changed since Edward A. Flynn ("Flynn"), the current MPD Chief, was sworn into office on January 7, 2008. Hannah also states that the job descriptions are not signed by Flynn or Valerie Williams ("Williams"), head of the MPD Human Resources Department. (*Compare* Tokus Aff. ¶¶ 3-4 *with* Hannah Aff. ¶¶ 3-4.) Hannah has not presented any evidence showing that the written job descriptions have been updated or that they must be signed by either Flynn or Williams to be valid. Thus, Hannah has not raised a genuine dispute of material fact regarding those job descriptions.

### Summary Judgment Standard

An initial question is whether there is a genuine dispute of material fact precluding resolution of this action upon summary judgment. In making that determination,

3

the Court applies the following criteria to the parties' proposed statements of material fact ("PSOF").

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, "a party may move for summary judgment, identifying each claim . . . on which summary judgment is sought." Fed. R. Civ. P. 56(a). This Court must view the facts in the light most favorable to the non-movant, resolving all evidentiary conflicts in his favor and according him the benefit of all reasonable inferences that may be drawn from the record. *See O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011).

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Put another way, summary judgment is appropriate when there are no genuine factual issues that could lead a reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

Although the moving party bears the initial burden of informing the Court of the basis for its motion, it may satisfy its burden by simply showing or pointing out to the Court that there is an absence of evidence supporting the non-moving party's case. *Celotex*, 477 U.S. at 325. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient to withstand summary judgment. *See Anderson*, 477 U.S. at 252.

4

Summary judgment is not a substitute for a trial on the merits or a vehicle for resolving factual disputes. *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). But if it is clear that the non-movant will be unable to establish an essential element of his claim, summary judgment is not only appropriate, but mandated. *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006) (citing *Celotex*, 477 U.S. at 322-23).

*Relevant Facts*[2]

Hannah, a light-brown-skinned African-American male, who is 5'8" tall and weighs 168 pounds, has been employed as a MPD law enforcement officer since December 2, 1996. As a sworn officer, Hannah is authorized to carry firearms, including a .40 caliber Smith & Wesson handgun and a 12-gauge shotgun, and to use deadly force in the performance of his duties.

Jerome J. O'Leary ("O'Leary"), a dark-skinned African-American male, was a MPD lieutenant from November 21, 2004, until sometime in 2008, when he was promoted to captain. On February 21, 2008, O'Leary stated that black officers had to be more efficient on the job, so overtime could be managed. O'Leary stated that they were going to teach Hannah how to be more efficient with his time at work.

On February 22, 2008, O'Leary told Hannah that, as a black officer on the job, he was not being efficient in his work. O'Leary also told Hannah that if he wanted to get

---

[2]The relevant facts are based on the Defendants' proposed statement of material facts to the extent that they are undisputed, as well as Hannah's statement of material facts in opposition to the Defendants' third motion for summary judgment.

5

promoted he needed to manage his overtime for the new administration. O'Leary sent Hannah

home and would not let him finish his arrests or interviews of juveniles arrested for stated

charges.

In early March of 2008, O'Leary allowed Melissa A. Takacs ("Takacs"),[3] a MPD

police aide, to work unlimited overtime. A police aide is an apprentice position, not a sworn

law enforcement officer position. Takacs and Hannah had different position descriptions and

different job responsibilities.

On March 11, 2008, MPD Sergeant Christopher Gull ("Gull"), a 6'2" white male

who weighs 250 pounds, instructed Hannah how to handle two juveniles who were in the

holding room of the police station. Hannah did not obey Gull's instructions. Hannah

maintains that Gull's directive was in violation of state law and Milwaukee Police Policy

3/090.75.

Gull instructed Hannah to proceed to O'Leary's office. Hannah did not obey

Gull's instructions. Gull grabbed Hannah's arm.

After releasing Hannah's arm, Gull and Hannah proceeded to O'Leary's office.

Hannah told O'Leary that Gull had "assaulted" him, and that he was also tired of O'Leary

"harassing" him about his job. Hannah also stated that he would be filing a federal harassment

complaint against O'Leary. Hannah stated that he did not trust O'Leary to investigate his

complaint and wanted someone of higher rank to investigate Gull for assaulting him. O'Leary

---

[3]The parties' proposed facts do not indicate Takacs' race. The Court has also reviewed the underlying factual materials in an effort to ascertain her race but has not located that information.

6

instructed Hannah to put his complaints in an "In the Matter of" report. Hannah did not do so.

On March 13, 2008, Hannah was placed on desk duty and was not informed of the reason for such placement. By a letter dated March 24, 2008, to Flynn, Hannah complained of job harassment. (*See* Hannah Aff., Ex. 7.)

On June 27, 2008, the MPD issued Personnel Order 2008-126 formally disciplining Hannah for his March 11, 2008, behavior. The personnel order found that Hannah had failed to obey a lawful order from an officer of higher rank in violation of MPD Rule 4, Section 2/030.00 and that he had twice failed to treat a supervising officer with respect in violation of MPD Rule 4, Section 2/140.00. Hannah was suspended from work for two days without pay for failing to obey a lawful order emanating from an officer of higher rank and an official reprimand for his failure to treat a supervising officer with respect (Count 1); and, a one-day suspension without pay for his failure to treat a supervising officer with respect (Count 2).

Flynn upheld the charges against Hannah. Flynn informed Hannah that he could not rescind the discipline because Hannah had previously been disciplined for failing to obey a lawful order from an officer of higher rank. MPD Personnel Order 2008-126 is a valid order signed by Flynn, the duly appointed Chief of the MPD.

Hannah filed a charge of discrimination under the Civil Rights Act of 1964, as amended against the City with the United States Equal Employment Opportunity Commission ("EEOC") on October 15, 2008 (Charge of Discrimination No. 443-2008-02829C). EEOC

did not find that there was reasonable cause to believe that discrimination had occurred as alleged in the charge.  EEOC issued a notice of dismissal and right to sue on May 26, 2009.

*Analysis*

By the City's summary judgment motion, it contends that Hannah's discrimination claims should be dismissed because he has failed to present evidence to establish a *prima facie* case of sex or racial discrimination with respect to overtime assignments or harassment.  Moreover, the City maintains that it has established a legitimate non-discriminatory reason for disciplining Hannah  –  he violated a MPD rule by failing to comply with a lawful order of an officer of a higher rank, and he has failed to present facts indicating that the proffered legitimate non-discriminatory reasons for disciplining him were a pretext for discrimination.

In opposing the City's motion, Hannah states that he has presented direct and indirect evidence of discrimination, and that he has established a *prima facie* case of race and sex discrimination.  He also states that the City has failed to address his retaliation claim.  He further maintains that he has presented facts indicating that the City's proffered reasons for disciplining him are a pretext for discrimination.

Title VII makes it unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, [or]. . . sex. " 42 U.S.C. § 2000e-2(a)(1);  *Turner v. The Saloon, Ltd.*, 595 F.3d 679, 683 (7th Cir. 2010); *Williams v. Wendler*,  530 F.3d 584, 587

8

(7th Cir. 2008) (stating that there can be "'racial' discrimination within the same race" and pointing out that Title VII "forbids discrimination on the basis of 'color.'" ). Title VII also prohibits an employer from retaliating against an employee for conduct that is protected under Title VII, providing in relevant part that "[it] shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter. . . ." *See Leonard v. E. Ill. Univ.*, 606 F.3d 428, 431 (7th Cir. 2010) (citing 42 U.S.C.§ 2000e-3(a)).

In proving a claim of discrimination or retaliation in violation of Title VII, a plaintiff may proceed under either or both of two paths – the direct method and the indirect method – or a combination of the two. *Good v. Univ. of Chi. Med. Ctr.*, 673 F.3d 670, 672-73 (7th Cir. 2012) (race discrimination); *Leonard*, 606 F.3d at 431 (retaliation). Although these formalistic tests have been increasingly criticized, *see Coleman v. Donahoe*, 667 F.3d 835 (7th Cir. 2012), *Good*, 673 F.3d at 680, and *Harper v. C.R. Eng., Inc.*, No. 11-2975, ___ F.3d ___, 2012 WL 2053574, at *11 (7th Cir. June 8, 2012), the tests are controlling law; and, unless and until that case law is invalidated, this Court is obligated to apply to them.

Hannah maintains that the direct and indirect method apply to his case. Direct evidence requires an admission by the decision-maker that his actions were based upon the prohibited animus. *Dickerson v. Bd. of Trs. of Cmty. Coll. Dist. No. 522*, 657 F.3d 595, 601 (7th Cir. 2011). This type of evidence is rare, as it "essentially requires an admission by the decision-maker" that it took actions for unlawful reasons, *Rogers v. City of Chicago*, 320 F.3d

9

748, 753 (7th Cir. 2003), and "employers are usually careful not to offer overt remarks revealing discrimination" *Dickerson*, 657 F.3d at 601. The direct method of proof can also entail presentation of " 'a convincing mosaic' of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." *Silverman v. Bd. of Educ. of City of Chi.*, 637 F.3d 729, 734 (7th Cir. 2011). But whether one has direct or circumstantial evidence, the focus of the direct method is whether the evidence "points directly to a discriminatory reason for the employer's action." *Id.* at 734, n.3.

A plaintiff pursuing the route of establishing a "convincing mosaic" of circumstantial evidence may present any of three broad types of circumstantial evidence. *Id.* at 734. The first type includes evidence of "suspicious timing, ambiguous statements oral or written, behavior toward or comments directed at other employees in the protected group, and other bits and pieces from which an inference of discriminatory intent might be drawn." *Id.* The second type is evidence showing that the employer "systematically treated other, similarly situated . . . employees better." *Id.* The third type is evidence that he suffered an adverse employment action and that the employer's justification is pretextual. *Id.*

A plaintiff proceeding under the indirect method of proof, as established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), must generally show that (1) he is a member of a protected class; (2) he was meeting his employer's legitimate performance expectations; (3) he suffered an adverse employment action; and (4) he was treated less favorably than similarly situated individuals who are not members of a protected class. *See*

10

*Ineichen v. Ameritech*, 410 F.3d 956, 959 (7th Cir. 2005). "The failure to establish any one of the initial four elements [of a *prima facie* case] defeats a discrimination claim." *Bio v. Fed. Express Corp.*, 424 F.3d 593, 596 (7th Cir. 2005).

If the plaintiff establishes a *prima facie* case, the burden of production then shifts to the defendant to provide a legitimate, nondiscriminatory reason for the decision. *McDonnell Douglas*, 411 U.S. at 802. Then, if the defendant articulates a legitimate, nondiscriminatory reason, the burden of production shifts back to the plaintiff to show that the defendant's explanation was pretextual. *Ineichen*, 410 F.3d at 961.

Pretext requires more than a showing that the decision was "mistaken, ill considered or foolish . . . so long as [the employer] honestly believe[s] [in the reason presented], pretext has not been shown." *Jordan v. Summers*, 205 F.3d 337, 343 (7th Cir. 2000). "'Pretext means a dishonest explanation, a lie rather than an oddity or an error,'" *Ballance v. City of Springfield*, 424 F.3d 614, 617 (7th Cir.2005) (quoting *Kulumani v. Blue Cross Blue Shield Ass'n*, 224 F.3d 681, 685 (7th Cir. 2000)), or "'deceit used to cover one's tracks,'" *Grube v. Lau Indus., Inc.*, 257 F.3d 723, 730 (7th Cir. 2001) (citing *Kulumani*, 224 F.3d at 684).

With respect to his overtime claim, Hannah asserts that O'Leary, an African-American male of darker skin color, discriminated against him based on race/color and gender. *See Williams*, 530 F.3d at 587 (stating "[l]ight-skinned blacks sometimes discriminate against dark-skinned blacks, and vice versa, and either form of discrimination is literally color

11

discrimination.")  Hannah relies on O'Leary's directive that he reduce his overtime hours because he was inefficient and a reduction of overtime hours would be necessary for any potential promotion of Hannah.  O'Leary also instructed Hannah to leave work when his scheduled shift ended and did not allow him to stay longer to finish processing his arrests or to complete interviews of juvenile arrestees.  Hannah contends that he was treated differently than Takacs, a female police aide, who was similarly situated except that she was allowed to work unlimited overtime hours.

Whether considering Hannah's gender and race/color under the indirect method of proof or as a part of a mosaic of circumstantial evidence, Hannah has failed to establish that he and Takacs were similarly situated.  The similarly-situated inquiry asks "essentially, are there enough common features between the individuals to allow a meaningful comparison?" *Coleman*, 667 F.3d at 841 (quoting *Humphries v. CBOCS W., Inc.*, 474 F.3d 387, 405 (7th Cir. 2007)).  There must be "sufficient commonalities on the key variables between the plaintiff and the would-be comparator to allow the type of comparison that, taken together with the *other prima facie* evidence, would allow a jury to reach an inference of discrimination." *Id*.

The purpose is to eliminate other possible explanatory variables, "such as differing roles, performance histories, or decision-making personnel, which helps isolate the critical independent variable" – discriminatory animus.  *Good*, 673 F.3d at 675 (quoting *Humphries*, 474 F.3d at 405).  Similarly situated employees "must be 'directly comparable' to the plaintiff 'in all material respects,'" but they need not have identical employment files.

12

*Id.* (citations omitted).  As long as the distinctions between Hannah and the proposed comparators are not "so significant that they render the comparison effectively useless," the similarly situated requirement is satisfied.  *Id.* (quoting *Humphrie*s, 474 F.3d at 405).

The primary functions of a police officer and a police aide, respectively, as set forth in the MPD job descriptions differ significantly.  The function of a police officer is to preserve the public peace, protect life and property, prevent crime, and enforce the City of Milwaukee's ordinances, the laws of Wisconsin, and arrest violators of those laws. (*See* Tokus Aff. ¶ 3, Ex. 1.)

The function of a police aide is to serve the MPD as a "uniformed civilian" employee in an "apprentice style program" designed to prepare the aide for a career as a police officer.  (Tokus Aff. ¶ 4, Ex. 2.)  Duties include "clerical functions" and booking of MPD arrestees and are "widely varied" so that the aide can experience a "wide range of operational and administrative functions." (*Id.*)  Police aides are also required to meet established criteria by completing a course of college curriculum and a physical fitness program prior to becoming a police officer.  (*Id.*)

A police officer is a sworn officer of the law.  A police aide is not.  A police aide participates in an apprentice-type program that is used to train potential law enforcement officers.  Takacs was able to perform some of the same tasks as a MPD officer.  However, as a police aide, Takacs was not authorized to perform those tasks unless she was under the supervision of a MPD officer.  Unlike Hannah, she could not be promoted to a higher rank

13

within the MPD. There is also no evidence that O'Leary considered Takacs to be inefficient. Nor is there is evidence that the same overtime policy applied to all MPD staff, including police aides. Despite construing the evidence in the light most favorable to Hannah, there is insufficient evidence from which a reasonable jury could find that Hannah was similarly situated to Takacs. *See Coleman*, 667 F.3d at 841. Therefore, Hannah has not established a *prima facie* case.

Additionally, even if Hannah had established a *prima facie* case, the City has articulated a legitimate non-discriminatory reason; Hannah needed to be more efficient and would not be promoted unless he reduced his overtime. Hannah has not presented any evidence indicating that O'Leary's reasons for limiting Hannah's overtime were dishonest or a lie.

Despite viewing the evidence and the reasonable inferences from the evidence in the light most favorable to Hannah, there is not sufficient evidence upon which a reasonable jury could find in his favor on his overtime Title VII discrimination claim. Therefore, the City's summary judgment motion is granted as to Hannah's overtime Title VII gender and/or race/color discrimination claim.

*Harassment*

Hannah also claims that he was harassed based on his gender and his race/color because he was not allowed to work overtime; because of Gull's March 11, 2008, treatment of him; and because he (Hannah) was disciplined for his response to Gull on March 11, 2008.

14

Title VII prohibits employers from "requiring people to work in a discriminatorily hostile or abusive environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993); *Shanoff v. Ill. Dep't of Human Servs.*, 258 F.3d 696, 701 (7th Cir. 2001). To prevail on his harassment claim, Hannah must establish that: (1) he was subjected to unwelcome sexual and or racial/color conduct, advances, or requests; (2) because of his gender and/or his race/color; (3) the acts were severe or pervasive enough to create a hostile work environment; and (4) there is a basis for employer liability. *Lapka v. Chertoff*, 517 F.3d 974, 982 (7th Cir. 2008). A difference in sex is not a necessary condition of sexual activity and hence (most courts think) of sexual harassment. *See McDonnell v. Cisneros*, 84 F.3d 256, 260 (7th Cir. 1996). *See also generally, Williams,* 530 F.3d at 587 (regarding race and color).

To survive summary judgment on his harassment claim, Hannah must demonstrate that (1) his work environment was both objectively and subjectively offensive; (2) that the harassment was based on his race and or gender; (3) that the conduct was either severe or pervasive; and (4) that there is a basis for employer liability. *Vance v. Ball State Univ.*, 646 F.3d 461, 469 (7th Cir. 2011) *cert. granted*, __ U.S __, 2012 WL 2368689 (U.S. June 25, 2012) (No. 11-556). To determine whether a working environment is "hostile," courts may consider "the severity of the allegedly discriminatory conduct, its frequency, whether it is physically threatening or humiliating or merely offensive, and whether it unreasonably interferes with an employee's work performance." *Scruggs v. Garst Seed Co.*, 587 F.3d 832, 840 (7th Cir. 2009). In the case of discriminatory statements, the court "must

15

assess the frequency of their use, as well as whether the remarks were stated directly to the plaintiff or whether the plaintiff heard them secondhand." *Dandy v. United Parcel Serv., Inc.,* 388 F.3d 263, 271 (7th Cir. 2004) (internal citations omitted).

O'Leary's denial of overtime for Hannah arguably supports his claim of harassment based on race and/or gender. O'Leary and/or Gull's treatment of Hannah relative to the March 11, 2008, incident also arguably constitutes harassment based on race or color. These two types of conduct are considered together to determine whether Hannah's harassment claim can withstand summary judgment. The relevant incidents took place over several months during 2008.

O'Leary's overtime comments were made on two consecutive days in February 2008. O'Leary told Hannah to reduce his overtime, and O'Leary referred to Hannah's race twice indicating that black officers needed to be more efficient on the job. O'Leary's word choice was not inflammatory or patently offensive.

O'Leary's February 2008 comments are subject to multiple interpretations. He could have been singling out black officers because, as a black officer himself, he wanted them to excel; or because he believed that black officers are less efficient; or, as suggested by Hannah, because throughout African-American history there has been "animosity" between African-Americans with lighter skin and those with darker skin. Construing the evidence in the light most favorable to Hannah, the Court considers the latter two possible interpretations.

16

Takacs was able to work unlimited overtime in early March 2008. No additional details are provided about the frequency or the number of hours involved in this overtime disparity.

The events of March 11, 2008, begin with Gull's treatment of Hannah, and include O'Leary's response, Hannah's subsequent placement on desk duty, and Flynn's June 27, 2008, approval of the discipline arising out of the March 11, 2008, incident. Gull and Flynn are Caucasian. Gull, whose size exceeded Hannah's, ordered Hannah to process arrests and grabbed Hannah's arm when Hannah did not comply with his command. As a higher ranking officer, Gull had authority over Hannah and could properly issue commands to him. There is no indication that Gull was authorized to grab the arm of a lower ranking officer. However, Gull's action was rather limited in terms of being a physical threat. Later that day in O'Leary's office, Hannah also asserted that he was tired of being harassed by O'Leary. O'Leary told Hannah to complete an "In the Matter of" report.

Taken together and viewed in the light most favorable to Hannah, the foregoing events did not rise to the level of an objectively "hostile" work environment. The allegedly discriminatory conduct was largely based on sporadic, isolated incidents. The arm-grabbing was the only conduct that was physically threatening.

Additionally, Hannah's March 11, 2008, conduct was found to have violated two MPD rules. Hannah concedes one of the two violations. The disciplinary determination was upheld by Flynn who noted that Hannah had been previously disciplined for failing to obey an officer of a higher rank.

17

These incidents and actions arising from them interfered to some extent with Hannah's work performance. However, they did not unreasonably interfere with his work performance. Moreover, O'Leary's race- or color-related comments were not severe or pervasive enough to create an objectively hostile work environment. Despite viewing the evidence and the reasonable inferences from that evidence in the light most favorable to Hannah, there is not sufficient evidence upon which a reasonable jury could find for Hannah on his Title VII harassment claim. Therefore, Hannah's harassment claim is dismissed upon summary judgment.

*Retaliation*

In the context of the laws governing employment rights, "unlawful retaliation occurs when an employer takes an adverse employment action against an employee for opposing impermissible discrimination." *Rogers*, 320 F.3d at 753. A plaintiff may prove his retaliation claim under either or both the direct or indirect methods of proof, although the distinction between the two methods "is often fleeting." *Leonard*, 606 F.3d at 431(quoting *Turner*, 595 F.3d at 688)(internal citation omitted).

In its initial summary judgment brief, the City notes that Hannah's Complaint includes a retaliation claim, although that brief does not separately analyze that claim. However, in its reply brief, the City contends that, although Hannah challenges one of the reasons for which he was disciplined, he does not challenge the other. Therefore, the City

18

contends that Hannah has failed to show that the City's legitimate non-discriminatory reason for disciplining him is a pretext for retaliating against him for his protected conduct.

The direct method requires Hannah to show: (1) he engaged in statutorily protected activity; (2) a materially adverse action was taken by the employer; and (3) a causal connection between the two. *Id.* at 431. The indirect method requires Hannah to show: "(1) after lodging a complaint about discrimination, (2) only he, and not any otherwise similarly situated employee who did not complain, was (3) subjected to an adverse employment action even though (4) he was performing his job in a satisfactory manner." *Stone v. City of Indianapolis Pub. Utils. Div.*, 281 F.3d 640, 642 (7th Cir. 2002). Once a *prima facie* case is set forth, the burden-shifting pretext analysis takes place. *Serednyj v. Beverly Healthcare, LLC*, 656 F.3d 540, 556-57 (7th Cir. 2011).

Hannah relies on both the direct and indirect methods in opposing summary judgment. Hannah relies upon his March 24, 2008, letter to Flynn as being statutorily protected activity. *See Coleman*, 667 F.3d at 859.[4] While the letter refers to job harassment, it does not suggest that the harassment was related to his race or gender. The complaint must indicate that the discrimination occurred because of sex, race, national origin, or some other protected class. *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663-64 (7th Cir. 2006). However, the attachment to the Flynn letter indicates that copies were sent to the EEOC, the

---

[4]Paragraph seven of Hannah's affidavit, in pertinent part, states "[d]uring the other Discrimination investigation . . . , [Hannah] was sent a letter requesting a written response to [the City's] answer to complaint of Discipline, Harassment and Retaliation. Attached hereto, marked as Exhibits 5 thru 15." Exhibit seven to Hannah's affidavit is a copy of of Hannah's March 24, 2008, letter to Flynn. The Hannah letter to Flynn states "[e]nclosed is a letter of an incident on 3-11-08."

Wisconsin Equal Rights Division (the "ERD") (the Wisconsin counterpart of the EEOC) and, the National Association for the Advancement of Colored People (the "NAACP"). Therefore, when the evidence and the reasonable inferences therefrom are viewed in the light most favorable to Hannah, a reasonable jury could find that Hannah's March 24, 2008, letter to Flynn was protected under Title VII.

The discipline that Flynn upheld against Hannah is also an adverse employment action. Hannah was suspended for three days of work without pay and received an official reprimand. *Whittaker v. N. Ill. Univ.,* 424 F.3d 640, 647 (7th Cir. 2005) (A suspension can constitute an adverse action.)

The next question is whether there is a causal connection between Hannah's letter to Flynn and the discipline. To establish causation, Hannah must show that his letter to Flynn, not his misconduct, caused the discipline. To establish a causal connection between Hannah's complaint and the discipline, Hannah relies on the temporal proximity. Hannah's letter to Flynn was dated March 24, 2008. Flynn upheld the discipline of Hannah sometime after June 27, 2008. More than twelve weeks passed from when Hannah wrote to Flynn and Flynn's decision to uphold the disciplinary determination. Suspicious "timing alone is insufficient to establish a genuine issue of material fact to support a retaliation claim." *Turner*, 595 F.3d at 687 (quotation omitted); *see also Argyropoulos v. City of Alton*, 539 F.3d 724, 734 (7th Cir. 2008) (seven-week interval does not preclude summary judgment). Here, the interval between the action and the protected activity does not establish a causal connection.

20

With respect to indirect proof of discrimination, Hannah has not identified any similarly-situated employee who violated MPD rules on more than one occasion, did not engage in the protected activity, and was not disciplined. Moreover, even if Hannah was able to establish a *prima facie* case of retaliation, the City has presented as legitimate non-discriminatory reason for disciplining Hannah – he disobeyed the orders of a superior officer. Hannah has not presented any evidence indicating that the City did not honestly believe that Hannah had violated a MPD rule. Therefore, regardless of whether the claim is considered under the direct or indirect method of proof, Hannah's retaliation claim must be dismissed on summary judgment.

### Motion to Compel and for Sanctions

Hannah also filed a motion to compel discovery and for sanctions. The Court's determination on the City's summary judgment motion moots Hannah's motion to compel.

However, the motion to compel would also be denied because it is procedurally improper. Hannah served his interrogatories and request for production of documents on the City on September 30, 2011. He spoke to counsel for the City on October 4, and 14, 2011, and wrote counsel on October 7, 2011, asking that the discovery materials be promptly supplied. On October 21, 2011, Hannah filed his motion to compel and for sanctions. Hannah's motion is predicated upon his contention that the City improperly failed to respond to his discovery requests.

21

The City had 30 days from the date Hannah's discovery demands were served upon it to respond to them. *See* Fed. R. Civ. P. 33(b)(2) & 34(b)(2). Hannah filed his motion before the time for the City to respond had run. His motion to compel was premature. It follows that there is also no basis for imposing sanctions upon the City. Therefore, Hannah's motion to compel and for sanctions is also subject to denial on those grounds.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT**:

The Defendants' motion for summary judgment (ECF No. 70 ) is **GRANTED**;

Hannah's motion to compel and for sanctions (ECF No. 77) is **DENIED**;

This action is **DISMISSED**; and

The Clerk of Court is **DIRECTED** to enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 10th day of July, 2012.

**BY THE COURT**

_____

**Hon. Rudolph T. Randa**
**U.S. District Judge**

22